The appellants, Mr. Dziubla. Yes, good morning, Your Honors. May it please the Court, Harrison Long for the plaintiff appellants, Robert Dziubla, who is present today in court, and Mountain View Capital. The first issue I'd like to raise is kind of an overall comment about this case, is that Cargill wants to enforce an arbitration provision in the joint venture agreement that plaintiffs had, plaintiff appellants had with CFSC, Cargill Subsidiary. Cargill is not a signatory on the contract, and once that's established, there's only three ways that Cargill can take advantage of the arbitration clause. One is by third-party beneficiary status. Two, estoppel. Three, agency. In the contract, it specifically states that there's to be no third-party beneficiary rights under the contract. That takes care of element one. Now, with respect to elements two and three, estoppel and agency, there's not one case that deals with a very important fact pattern in this case, and that is where the contract specifically excludes any third parties from taking advantage of the agreement. There is no case that I have found or in the appellee brief where the courts deal with a specific fact pattern where a party excludes. Aren't you hoist by your own petard? You have alleged that Cargill and CFSC, by an alter ego allegation, are one and the same person. They're one and the same with respect to the RICO allegation. Pardon me. They're only one and the same when you say they are, not when they say they are. No. What I'm saying is purposes of RICO, when Cargill sets up the subsidiary, they use that subsidiary to take over the joint venture and to force the plaintiffs to litigate in Singapore. They do it a way of insulating themselves. But what Judge Beyer is saying is the legal effect of that allegation is that, well, they're alter egos of each other. They're one and the same person. So if they're the same person, why can't they take advantage of the arbitration provision? Because they're a non-signatory in the contract, and the contract specifically states that. But they are a signatory according to your allegations. As the alter ego. I did not. That's a point. I don't know the difference. Let's take a look at your allegations. Plaintiffs are informed and believe, you're a plaintiff in this case, and based there on alleged that adherence to the fiction of the separate existence of the company, defendant and promote injustice against plaintiffs.  Cargill. They're one and the same person. Cargill. Plaintiffs would be unable to enforce any judgment obtained in this action, and the courts of Thailand have already found that these entities are one and the same as Cargill Inc. For purposes of the RICO, the fraud, the corruption. That's true. That's true. Where does it say for purposes of the RICO, fraud, action, and not for any other reason? It doesn't say that. What I'm doing is paraphrasing why. So that's why the court below said plaintiffs cannot, quote, have it both ways. All right. Do you want to go to some other portion of your argument, or do you want to stick with this? Well, I'll move on, then. The district court held, and in the Tracer case and the Mediterranean case, that when you have an arbitration clause that's written stating that claims arising under the agreement, arbitration is only appropriate for claims dealing with performance of the contract and interpretation of the contract. It doesn't mean that every single claim that had come up between the parties is arbitratable. When you've got an arising under situation and there's no other language such as relating to the agreement or in connection with the agreement, the arbitration clause must be strictly construed, and the only claims that are subject to arbitration deal with performance of the contract and interpretation of the contract. Here, we have cause of action RICO. We have interference with contractual relations. It's all based upon this contract, isn't it, the joint venture? No. RICO can stand on its own. I know that, but it's all based upon this underlying agreement, I thought. Yes. I mean, you don't have a RICO claim if your client didn't have a contract with the opposite parties, right? Correct. With respect to the RICO claim against Cargill, that deals with bribery, corruption, violation of security laws. It has nothing to do with interpretation of the contract or performance of the contract. But it all has to do with attempts to take from Mr. Jubla those benefits which he richly deserves from the contract, right? That's your claim. Not with RICO. Bribery, corruption, securities law. It's only separate from his benefit. The purpose of the RICO bribery and corruption was to move Jubla out of the joint venture in Southeast Asia and let Cargill and its puppet CFSC reap the benefits of their malefaction, right? Correct. Correct. But the claims, but the claims, when you have an arbitration clause drafted as this one is, it only gives performance of the contract and interpretation of the contract. In the Mediterranean tracer cases, you had cause of action for conversion, for quantum merit. The Court refused to submit those claims to arbitration, just as here we have claims such as, like RICO, et cetera, that have nothing to do with interpretation and performance of the contract. In the JRS products case, dealing with interference with contractual relations and interference with economic advantage, by definition, a nonsignatory tortfeasor cannot benefit from a contract that they have interfered with or has caused interference with economic advantage. It's precisely what's happened here. By definition, Cargill cannot force those claims to arbitration. There's not a party to the contract, by definition, under those two theories. It takes a third party to come in and interfere with the contract and economic relations. Now, where we feel that arbitration would be appropriate, it's a case cited by Cargill. It's that Smith-Enron case. That's where you had the defendants assigning the contracts that contained the arbitration clause to other entities. And the defendant tried to claim, well, the other entities weren't parties to the contract. Well, before there were signatories and before they assigned the contracts, the defendants were bound by those provisions. So in that situation, the Court compelled arbitration. But not in the situation here where you've got a nonsignatory expressly excluded dealing with theories that do not relate to performance of the contract or interference with the contract. Well, wait a minute. If you have both Cargill and CFSC, as you allege, are the same person, then when Cargill, the same person as CFSC, interferes with a contract, why is that not a claim arising out of the contract? Because our position is that when we put Cargill and CFSC together, they're working in concert for purposes of RICO and conspiracy. Okay? That doesn't mean they get the benefit of the contract. They're not a signatory. They're expressly excluded. But when it comes to how Cargill has set up this operation, this shell company, to take away the plaintiff's rights under the joint venture agreement, then they're one and the same. CFSC is a signatory to the group.  Correct. That's a subsidiary, yes. It's a subsidiary of Cargill, right?  A wholly owned subsidiary. I'm sorry? Is it a wholly owned subsidiary? I believe one of the Zubla Mountain View entities had a portion, maybe 5 percent. But you say they're one and the same, at least for RICO purposes. Sure. All Cargill did was set up, you know, shell subsidiaries to deal with the contracting parties and insulate themselves from liability. Okay? In that situation, they're the same. But when it comes to reading the contract, the only people that can be bound by that contract are the signatories. Assinees, successors of interest, they're all excluded. We're going around and around. You're saying the signatories include Cargill because you allege that Cargill and CFSC are the same person. My distinction is they're one and the same with respect to how they set up this mechanism of taking advantage of the appellant and who gets to enforce the terms of the contract. The final point I'd like to make is unconscionability, that the arbitration clause in the contract is unconscionable. What happened is Mr. D'Souza had a very lucrative law practice, and he moved to Thailand based on the term sheet that was presented to him by Cargill. He moved his family out there and started a whole new life. His only source of income was the joint venture. He had no other source of employment. A year later, Cargill presents him with the joint venture agreement and says, sign this agreement or we're going to pull out of the joint venture. And if that happened, Mr. D'Souza with his family would be stuck in Thailand with no job and no income. So he was forced to sign the agreement. And in the Harsco case he was a very sophisticated attorney. But the Harsco case is the smartest literal excerpt from the Harsco case. The smartest guy in the world pulling up stakes and moving his family across the world based on the representations of a wealthy corporation to find himself at the mercy of that corporation. It's precisely what the Harsco case says. Did the district court address this unconscionability claim? Yes. And what was the district court's reasoning? I believe that Mr. D'Souza was a well-educated lawyer, international lawyer, and he signed the contract. But that's contrary to the Harsco decision. Because you can be a very smart and sophisticated person and rely on the representations of a powerful company. But if the district court made a finding after seeing the evidence as to the extent of Mr. D'Souza's sophistication, his intelligence, his experience and his resources, then what is the scope of review of this court, of the district court's determination that it was not unconscionable? It's de novo. I believe the court views it de novo and in light of the Harsco. As to the factual findings which bottom the finding of unconscionability, isn't that abuse of discretion? Yes, it would not be de novo. The arbitration is viewed de novo. Abuse of discretion in applying the Harsco decision, the lower court's ruling, is contrary to that whole thing. I mean, shouldn't we defer to the district court that had before us a record as to Mr. D'Souza's ability to negotiate? All those are factual issues, right? Correct. But the Harsco decision says that's not enough. The Harsco decision, you can be all those things and still be at the mercy of a large corporation as a matter of law. Yes. What was the substantive unconscionability that you're alleging here? That Mr. D'Souza was only his only source of revenue, his only job, a year later after he gets the term sheet from Cargill, which is why he moved his family, why he gave up his law practice. He's presented with the agreement a year later saying, here, take it or leave it, sign it. And he has to sign it because he had no other source of income. But that goes to procedural unconscionability in your California law, right? Okay. Because of a contract of adhesion we just had in the last case. Right. What's the substantive unconscionability? What terms of the joint venture agreement arbitration clause is unconscionable? Does he have to go to arbitrate this in Greenland? No, he's forced to arbitrate in Singapore. Where was he living? In Thailand. At the time he was in Singapore, but I don't think. Bangkok is pretty close to Singapore, isn't it? Yes. An hour and a half flight? Yes. And you said he was then living in Singapore. Yes. Okay. And then what happened is Mr. D'Souza exposes all the corruption and the bribery going on, and Cargill takes over the joint venture agreement in concert with the police at the same time that Mr. D'Souza is involved in a bankruptcy proceeding. He can't go back there to Singapore and arbitrate. If the court wants to compel arbitration, at least give us a chance to arbitrate in a friendly jurisdiction. The corruption and the bribery took place in Thailand. It was not that far away, correct. Well, but there was no claim of any corruption or bribery in Singapore, was there? No, but. Then why can't he go back to Singapore to arbitrate? Because it's not that far away from Thailand. Well, it's like saying corruption in Mexico is going to make California corrupt. Isn't that the same kind of argument?  Because it's not that far away? Well, because the decision-makers over in Singapore have a much further reach than two separate countries. That's Mexico and the United States. Are you saying Thailand has power over Singapore? Is that what you're saying? They don't have power over it, but because they're so closely together. What do you mean by closely? More than geographically close? Yes. In terms of all I'm saying is he can't go back to a location, even surrounding areas where he's alleged bribery and corruption, and he's in legitimate fear for his safety because he exposed all these allegations. Do you look at the substantive unconscionability as of the time that the contract was signed or as of the time that arbitration is supposed to proceed? At the time that the arbitration is supposed to proceed because substantively, he was there in Singapore. He was there. He was okay when he signed it, right? Yes, because he was there. But circumstances now after the fact, where he's in fear for his life, now it's not, it's substantially unconscionable. And he fears for his life to go back to arbitrate in Singapore because he's uncovered corruption of Cargill in Thailand, is your position, right? Yes, with the help of the government, too. Correct. Of the Thai government. Yes. The Singapore government is not involved. You've got a three-person arbitration panel in Singapore, right? And you're saying that the Thailand influence, the bad politicians in Thailand tainted the Singapore arbitration agreement. Yes. And, like, if the Court wants to compel arbitration, at least let us do it in a friendly environment. In a friendly environment to Mr. Zhu? Yes, to both parties. Of course, at the time it was signed, it would have been much more handy to your client than it would be to come to California or something. Correct. At the time, yes. All right. Do you wish to reserve any time for? I think I'm well over. Thank you. Thank you.  My name is Mark Holscher for Appellee Cargill. I'd like to start with where the appellant left off and give the Court some of the record and factual basis on which Judge Baird relied on making her determination that the arbitration agreement was not unconscionable. On May 20th, 2004, Judge Baird issued a detailed order. At pages 14 through 19 of that order, she relied upon declarations from two counsel from Cargill, a Mr. Robertson and a Mr. Godkin, who provided her with detailed declarations which described how Mr. D'Souza actively negotiated the joint venture agreement over a 10-month period of time. And during that 10-month period of time, Mr. D'Souza never objected to the arbitration provision. In fact, Mr. Godkin, and if you look at Excerpt to Record 457 through 450, or Supplemental Excerpt to Record 457 through 459, and I key, Your Honors, to page 458, Mr. Godkin explicitly recalled in his sworn declaration that Mr. D'Souza approved the JVA's arbitration provision that he now claims to be unconscionable. Did they negotiate that when he was in Southeast Asia or back in the States? I believe, Your Honor, that some of the negotiations took place in Southeast Asia. They were operating under a term sheet that the parties agreed was not a contract, I think, for the first 10 months or so. And then they then — Did the term sheet say anything about arbitration? It didn't, but it made it clear it was not a binding agreement. It was just an understanding of the parties. I would also like to refer, Your Honors, to the supplemental declaration of David Robertson, again, a Cargill in-house lawyer. That's at Supplemental Excerpt to Record 337, 338, and 339. He describes how Singapore is the form of choice for international arbitration and describes — Was that in general or just with regard to this agreement? In general, Your Honor, if you look at Excerpt to — Supplemental Excerpt to Record page 339, it says, for example, attached here, too, is Exhibit Z, is a true and correct copy of the TI Corruption Perceptions Index 2003. Of 133 countries scored, Singapore is ranked fifth in the index, alongside other countries at very low levels of perceived corruption. And it describes, at paragraphs 5 and 6, that Singapore uses — essentially, the international arbitration center there is utilized throughout Southeast Asia. And again, the idea that a threat in Thailand precludes someone from going to Singapore is simply not credible on its face. Is there any evidence of that in the record? Zero.  Well, I overstate that, Your Honor. I believe Mr. D'Souza indicated he felt — he submitted a declaration. Are feelings evidence? I don't want to do too good a job arguing for the other side, Your Honor. I want to be fair. I believe they submitted a declaration when Mr. D'Souza felt that he personally was fearful to go back to Thailand, and then there was an inference that he was also, therefore, fearful to go back to Singapore. I would note for the record — I don't know if it's part of our record — that one of the reasons our appeal was delayed was that he was in Asia doing business, our second delay of this oral argument. My question is this. We often, in immigration cases, have State Department country conditions as evidence of what is going on in the country. I'm not saying that they're admissible here, but is there anything objective which indicates that Thailand has political influence over Singapore in the determination of arbitration cases? Zero, Your Honor. In fact, what I've cited to you, Your Honor, the record, the supplemental record, indicates not only there is no influence, but Singapore is viewed as one of the leading arbitration centers in the world, if not Asia. With respect to the third-party beneficiary issue, we did not seek arbitration on a third-party beneficiary theory, and Judge Baird did not so rely. Further, I think it's important to note that the Tracer case, that appellant's site, was embraced by Judge Baird and by Cargill as the appropriate standard. We agree that this is not the broadest possible arbitration provision, and we explain below in our briefs why under Tracer, a non-signatory who is deemed to have interrelated conduct can avail itself of the arbitration provision. Further, as Your Honors have noted, the RICO causes of action here do relate specifically to the joint venture agreement. Essentially what Mountain View and DeZubo are arguing is they would deprive the benefit of the joint venture agreement because of these improper acts. I'd refer Your Honors to the complaint at paragraphs 98 and 104, which I believe alone set forth the specific bases for a finding that the RICO cause of action relies on a determination of joint venture agreement. And essentially what you will see when you look at those paragraphs is what Mr. DeZubo is saying is that Cargill came in, took over these properties, treated me terribly, and they had no right to do so. He lists in paragraph 98 seven or eight different actions that he believes Cargill took that were part of his RICO complaint. We believe those are things that Cargill was expressly entitled to do pursuant to the joint venture agreement with its buy-sell provision and the termination clause. Similarly, paragraph 104, which relates specifically to the alleged bribes, and I obviously don't need to say it to Your Honors. We vehemently disagree with that. This was first raised in 2002 in arbitration in Singapore and then dropped and not re-raised. But setting aside the merits, paragraph 104 of Plaintiff's complaint makes clear that the alleged bribery, notwithstanding our vehement disagreement, was done for the purpose of permitting Cargill to take away his benefits in the joint venture agreement. What DeZubo is saying is Cargill not only kicked him out of this hotel and took over operations, but paid money to local officials to let them do that. Our point is the joint venture agreement expressly permitted Cargill, after it executed the buy-sell provision, to do what was needed to take control of the properties. Including paying off the locals? No. We vehemently disagree with that allegation. But accepting his allegation is true. The only way he has standing to bring that allegation is on the basis that that alleged RICO activity interfered with his joint venture agreement. If asked any questions from the panel, I would ‑‑ I recognize I can't reserve for sir reply, but I would submit. Mr. Long, you have, I think, almost four minutes to rebut. The only point that I'd just like to bring up is, again, dealing with the unconscionability and the allegations in Mr. D'souza's declaration have been disputed. However, I believe he has made enough of a showing to show fear in going back to Singapore to litigate. That's where these issues were all raised. They weren't just raised in Thailand. They were raised in Singapore. And, you know, I believe he rightfully deserves his day in court. He's got a legitimate fear. He brought up some major allegations of bribery and corruption. And to force him to go back there would be basically ending this case for him. And I believe he should at least get his day in court in a friendly environment, even if it's at Cargill's headquarters. I believe that's in Minnesota. We would be willing to go there. But to force him right now, he's trying to get his life back together and go back to Singapore and stay for however amount of time in Singapore while this case is being litigated is just tremendously unconscionable to Mr. D'souza. For Cargill, it's fine. They're a huge corporation. Is that enough basis to show unconscionability because a person files a declaration and he's scared of the local authorities and he'd say, I don't want to have it arbitrated in Los Angeles because I think there's a corrupt police force or corrupt people there and I'm scared for my life? Well, did that – I'm sorry? Could you do that? If the declaration is specific enough, naming specific allegations, not just, well, I think there's corruption, I heard in the news that the cops are rough on citizens. If you point to specific situations, I believe that that's enough. Is there any declaration, including any declaration by a client, that there is anybody in a position of governmental authority in Singapore who has threatened him? Based on Mr. D'souza's knowledge of the environment there, that's why Cargill hired him is tremendous knowledge in Asia, and in his declaration he outlines, yes, how he believes the allegations that he raised in Singapore about Thailand, Thailand usually reach out and affect him in Singapore. He outlines that. Can you give me a citation to any statement by Mr. D'souza as to a Singapore governmental authority who has threatened him or is likely to threaten him? Not a specific individual, but if he goes back. Or an entity. Does he say the police department in Singapore is on the take from Thailand thugs? Well, the robbery does deal with the Thai government, correct? You're talking about Singapore. I'm drawing a distinction between Thailand and Singapore? Yes, we believe that. I want to know what evidence we have that Singapore threatens D'souza. We don't have a specific allegation. All we have is Mr. D'souza's knowledge of the country, how it works, the effect Thailand could have on Mr. D'souza being president, an hour and a half away in Singapore, when he's raising allegations of bribery and corruption in Thailand. Thank you very much.
judges: Siler, Tashima, Bea